Anderson, J.,
delivered the opinion of the court.
In April 1858, the widow and children, distributees of Nicholas P. Oglesby, dec’d, filed their bill in chancery in the Circuit court of Wythe county, against Thomas J. Boyd, administrator of said Oglesby, and his securities, and Robert Gibbony, surviving partner of Oglesby & Gibbony. The bill alleges the partnership of Oglesby & Gibbony, the death of Oglesby, the taking out letters of administration on his estate by said Boyd, and his undertaking, under an agreement with the surviving partner, to collect and settle up the business of the firm of Oglesby & Gibbony.; the payment to Gibbony on the 1st of August 1840, $2,013.89, in'full of his entire interest in the concern, having previously paid him the capital which he had put in, and the advances, with interest, which he had made to the firm ; which was in effect allowing him that sum, as his share in the net profits: that afterwards said administrator blended Oglesby’s individual estate with the unsettled business of the firm; and on the 1st day of August 1842, made a settlement before commissioner John P. Mathews, in which they were so treated after the 1st of August, 1840: a copy of which settlement is exhibited with the bill.
■ The complainants then say: “ In the conduct and management by said Boyd, as the agent for the surviving partner of the business of the firm of Oglesby & Gibbony, and in the settlement of that, a part from the individual estate of N. P. Oglesby, complainants find nothing of which they propose to object. But complainants do object to the purchase made by said Boyd of said Gibbony’s interest, after retaining all capital advanced, and allowing him as surviving partner, the sum of $2,013-89, on the score of net profits; because complain *683 ants allege that said Boyd, after returning to the estate, of if. P. Oglesby, dec’d, all capital stock which had been paid in, failed to realize for the benefit of the estate an amount of profits equal to that allowed and paid to the surviving partner.” They then aver that said arrangement was such as the administrator and surviving partner had no right to make, and that it is not binding on them; and that both are responsible, and should be held accountable to them for whatever profits should have been realized by the estate of if. P. Oglesby, from the business of the firm. And they charge that by this arrangement between the surviving partner and the administrator, there was lost to the estate a considerable sum.
. They also allege, that in the settlement of the administration account, the adm’r is allowed 5 per cent, commissions upon the aggregate receipts and disbursements; and they insist that 5 per cent, commission upon the receipts, under the circumstances, would have been ample compensation. And they surcharge the said settlement upon these, and only these two grounds: Their prayer is, that an account may be taken to show the true amount of net profits realized by the firm of Oglesby & Gibbony, and that there be such a reduction of commissions, and only so much allowed the administrator, as would be proper under the circumstances, and a decree for the balance which may appear to be justly due them, and for general relief.
Upon the first ground, for the impeachment of the settlement of 1842, made in the court of probate, the court is of opinion that an administrator is invested by the law with full dominion over the assets, and with full discretion for the liquidation and settlement of all claims due to or from the estate; these powers being necessary to a proper discharge of the duties of his office. He may make settlements and compromises *684 witli creditors, and give them confessions of judgments. Braxton, adm'r &c., v. Harrison's ex' or s, 11 Gratt. 54; Wheatly v. Martin's adm'r, 6 Leigh 62, 71. He has a right to demand and receive from the surviving partner of his intestate the share of the partnership effects due to the estaté of the deceased partner, whom he represents. And to this end he has the power to settle and compromise with him, with a view to the interest of the estate. It is true that in such transactions he may lay himself liable to a devastavit. But if he acts fairly, in good faith, and with a due regard to the interests of the estate, the distributees will be bound by his acts, and he will be protected.
The transaction complained of, was in effect a compromise and settlement, between Boyd, as the representative of the deceased partner, and Gibbony, the 'surviving partner. The latter agreed to take $2,018.89, in full of his remaining interest in the concern, and to turn over,. and relinquish the balance to the estate of his deceased partner, with the understanding that he was not to be liable for any further claims against the firm, or any losses which might be sustained upon debts due the firm, except as hereinafter noted. Was this a fair and reasonable compromise and settlement between the adm’r of the deceased partner and the surviving partner?
“ The fairness of a contract, like all its other qualities, must be judged of at the time it was entered into.” Fry on Specif. Perf. top p. 173, side p. 107. At the time this contract and settlement was made, there appears to have been partnership effects in the hands of Thomas J. Boyd, (including an account against George R. O. Floyd, amounting to $1,417.17,) sufficient to pay to the distributees of Oglesby, after paying all the debts of the firm, a larger sum on account of profits, than *685 had been paid to the surviving partner. The books of Oglesby & Gibbony, which were kept under the sole direction of Oglesby, showed that the whole of the said sum was due from Floyd to the firm, no credit having been entered on the books for the one thousand dollars, which Floyd claimed to have paid Oglesby on the 23d of March 1837, and which would be determined by the suit then pending in the name of the surviving partner against Floyd. The suit was brought on the 28th April, 1840; and in consequence of this controversy, judgment was not rendered until the 14th of April 1842. The verdict is for $427 83, with interest from the 12th of August, 1838 ; which is confirmed by the judgment of the court. Floyd had property and credit when the adm’r entered into this settlement on the 1st of August 1840, and was then good for the whole amount of the account; but at the date of the judgment he had become insolvent, and the whole debt was lost. Boyd could not have known that this account, which appeared, from the books kept by his intestate, to be due to the firm, was subject to a credit for $1,000, which had been paid to his intestate, according to the proof in the cause, and which he had neglected to credit. He was justified, therefore, in including the whole of this debt, in the estimate which he made of the profits of the business. .But, through abundant caution, he required Gibbony to stipulate in the contract, that if that credit should be allowed to Floyd, he would return one-half the amount, unless he could show that the whole of it was chargeable by law to Oglesby, and the distributees are entitled to whatever of benefit that stipulation gives. If it has not been shown that Oglesby’s estate is chargeable in law to the firm, -with the amount so paid to him by Floyd, its recourse is upon Gibbony, who is before the court in this suit in the capacity of surviving *686 partner, and not against Boyd, who has paid the money to Gibbony, and has not a dollar of it in his hands. Gibbony was only liable to pay the one-half of it, ™ case wbole of it was not legally chargeable to the deceased partner. Has that been shown ?
The court is of opinion that, in the absence of all fraud and collusion, the judgment of the court in the suit by the s. surviving partner, who represents the firm, against George B. O. Floyd, is conclusive against the distributees of the deceased partner, in the matters decided thereby, and that the effect of the said judgment is to sustain the claim of said Floyd, that he had paid the money to Oglesby. And the proof in the record, upon which the verdict is found, if it proves that the money was paid, proves that it was paid to Oglesby; and he not having given the firm the benefit of it, by entering it as a credit to the account of Floyd on the books of the firm, he is debtor to the firm in the place of Floyd, for the amount so receivedand in computing the assets or effects of the firm, it is proper to charge his estate with the whole amount so received by him and interest thereon; and consequently, Gibbony is not bound by his said stipulation, in his said contract with Boyd, to pay back any thing on account of the credit to which Floyd established his right.
But if the surviving partner and the administrator of the deceased partner, had the power to make a settlement and compromise as to what was due from the one to the estate represented by the other, the former had the right to propose to pay so much to the administrator for the interest of his intestate, just as he had to purchase his interest in the stock of goods; or vice versa to take so much for his interest, and to surrender the balance to the estate of his deceased partner; and the representative of the deceased partner had the right *687 to accept his proposition. And if the contract was fair and unaffected by fraud or collusion, it would not only be binding on the parties to it, but would conclude the distributees. If there was fraud or collusion the distributees might obtain relief in a court of equity to set aside the contract, and to hold both the parties to it responsible to them; or if they could show that the administrator had not acted in good faith, or that by a careless disregard of the interests of the estate which had been entrusted to him, he had allowed himself to be over-reached and the estate involved in loss, they might hold him to a devastavit. But the court is cf opinion, that in this case there is no ground for such an imputation against the surviving partner or the administrator. On the contrary, the contract was fair and reasonable, and as matters stood at the time, was to the advantage of the estate; and that it did not prove to be such in the end, was no fault of the administrator.
But if the administrator had, in this instance, erred in udgment, and had made a contract of settlement with the surviving partner, which at the time was injudicious, from a mistaken view of the true interests of the estate which he represented, after the extraordinary devotion which he had evinced to the interests of the estate, by his abnegation of personal interests, and the assumption of personal responsibilities for its benefit, by which numerous suits were probably avoided, and large sums saved to the estate in the shape of costs; after his extraordinary success in collecting the numerous debts due the firm, a large portion of whi ch were unsettled, and due by open account, through a period of the most unexampled pecuniary distress—a fact of public history which may be judicially known—and paying the numerous debts due from the firm, largely to northern merchants, without loss to the estate or to the firm, or the *688 costs of suit to enforce tlieir collection in a single instance; or by the payment of discount on the depreciated ' currency, which prevailed in the country where the debts were due the firm, and in which they had chiefly to be c°hected; exhibiting, it is but just to the administrator to say, a diligence, carefulness and financial skill, and fidelity to the trust confided to him, which it is to be regretted is rarely exhibited in the conduct of fiduciaries; and of which the plaintiffs in this suit are enjoying the fruits,. After all this, even in the case supposed, it would be extremely harsh and rigorous, to hold the administrator to a devastavit.
But when as we have seen, 1st, that the administrator and surviving partner were invested with power to make such a contract of settlement; 2d, that it was bona fide and reasonable, and beneficial to the estate of the deceased partner at the time it was made; and that its not being so in the end, was not the fault of the administrator. 8d, that it was approved by the commissioner who settled the accounts in July 1842, and by the court of probate: and 4th, that it was acquiesced in by the widow and the guardian of the infant distributees, for nearly sixteen years before the bringing of this suit, the Conclusion cannot be resisted that said contract of settlement is binding not only on the parties to it, but that the distributees are concluded by it.
With regard to the only other ground charged in the bill, for the impeachment of the settlement of 1842, the allowance of excessive commissions to the administrator, it is usual, and we think most proper to allow commissions only on the receipts. But in this case commissions are not allowed on all the receipts and disbursements, and we find from an examination of the accounts, that 5 per cent, commission upon all the receipts alone, with which the said Boyd is charged, both as administrator and as *689 agent of the surviving partner, would be inconsiderably less than the commission which he has been allowed. This includes a commission on the money borrowed, which was a most advantageous operation for the estate and firm, and involved personal responsibility and labor on the part of the administrator and agent, which ought to have entitled him to a commission, though none was claimed by him. It also includes a commission on all moneys which passed through the hands of the administrator as such, or as agent, all of which involved trouble and responsibility, though upon a considerable part thereof he did not claim commissions, for the reason, doubtless, that upon a part of the funds which passed through his hands, he had been allowed commissions both on the receipts and disbursements. But there is no law which prescribes what commission shall be allowed an executor or administrator. The amount that should be allowed him is not fixed by law, but rests in the discretion of the court; and what court is so competent to make the allowance as the court of probate. In some cases, perhaps, less than 5 per cent, has been allowed, and in some cases as high as 10 per cent, has been allowed, and approved by this court. We are disinclined to disturb the settlement upon this ground, especially after it has been so long acquiesced in by the widow and the guardian of the infant distributees. Indeed k seems to us that the administrator’s compensation is not greater than his services were worth to the estate.
The settlement of 1842 shows that the administrator, on the day said settlement was closed, paid to the widow and to the guardian of the infant distributees, their respective shares of the exact balance which appeared to be due them by that settlement, for which they gave their several receipts. And having acquiesced in that settlement so long; and the account exhibited by the admin *690 istrator with his answer, showing that all the assets which came into his hands subsequently to that settlement, have been fully administered, and that there is nothing in his hands due the distributees, the court is of opinion that this suit ought not to have been brought, and that the decree must be reversed, and the plaintiffs’ bill dismissed, with costs.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said decree is erroneous. Therefore it is decreed and ordered that the same be reversed and annulled, and that the appellees do pay to the appellants their costs by them about their appeal in this behalf expended. And this court, proceeding now to render such decree as the said Circuit court ought to have rendered in the premises, it is further decreed and ordered, the bill’of the appellees, who were plaintiffs below, be dismissed, and that the said appellees do pay to the defendants below their costs by them about their defence in that court expended.
Decree reversed'.